Good morning, Your Honors. Mr. Ross' sentence is procedurally unreasonable because the District Court altogether failed to address, grapple with, or even say a word about at least eight non-frivolous mitigating factors that the defendants made over the course of 30 pages of sentencing transcript after submitting a 30-page sentencing memorandum. Your Honor, notably, the core of the defense's mitigation here focused on Mr. Ross' mental illness, which was supported by an undisputed expert report which documented three different psychiatric conditions that went directly to Mr. Ross' perceived lack of remorse, the commission of the offense itself, and to his decision to go to trial. Now, Your Honor, this Court's decisions in United States v. Blue, United States v. Slappy, and United States v. Cox require reversal here. In those cases, the District Court's explanation, the District Court's reasoning was far more robust than what we have here, the far thinner record we have here, and the Court still said that the sentences were procedurally unreasonable, and therefore, the Court must hold the same here. Now, before addressing those cases, Your Honor, I'd just like to run through the eight detailed arguments that defense counsel made. First, the defense argued that due to a childhood that was full of poverty, of physical abuse, of mental abuse, and even abandonment at times, at the hands of an alcoholic mother, Mr. Ross developed what's called schizoid personality disorder, which impacted his ability to truly appreciate the wrongfulness of the conduct, which in turn led to his perceived lack of remorse. So that was number one. Number two, Your Honor, the defense argued that Mr. Ross had a neurodevelopment disorder, which caused him to have memory retention problems, and also impacted his verbal intellectual functioning, which impacted his ability to reason and to form good judgment. And that also, in turn, impacted his ability to absorb information that his defense attorneys were giving, which in turn impacted and contributed his decision to go to trial rather than accepting responsibility and pleading guilty. Now, number three, Your Honor, the defense argued that Mr. Ross had an adjustment disorder, which means that Mr. Ross was not able to see nuances. His world was black and white, so to him, if he was going to be convicted, the defense argued that effectively this was going to be a death sentence. He saw it as, I'm going to lose my job, I'm going to become homeless, I'm going to starve, and then I'm going to die. And so that hopelessness also contributed to his decision to go to trial rather than plead guilty. But additionally, Your Honor, number four, the defense also argued that this same adjustment disorder also was relevant to specific deterrence. Because of the hopelessness he associated with the conviction, he was not likely to reoffend. Fifth, the defense argued that despite these mental health challenges, that Mr. Ross still maintained a good job. He was a computer data entry clerk for eight years at the Baltimore City Police Department. Sixth, Your Honor, the defense argued that Mr. Ross was a caretaker and provider for his mother, the same mother who abused him, the same mother who tore an IV out of his arm when he was a child getting treated for an asthma attack because the mother became belligerent because the staff called her out as she was beating him as he was getting treated for this asthma attack. And seventh, Your Honor, with respect to the specific nature of this offense, the defense also argued that the amount of child pornography here was relatively small, was a very small amount compared to the routine child pornography case. And additionally, Your Honor, the defense also argued, and this is number eight, that Mr. Ross was not a collector of child porn. He deleted images after he saw them. Now, the government argued that this was aggravating, but the defense said it showed an amount of self-control. He wasn't amassing large amounts of pornography. Yet after all of this, Your Honor, after both the government and the defense's sentencing argument, the district court did not ask a single question. The district court didn't ask a single question to either the defendant or the government. There was a surprising lack of engagement. Instead, the district court, in a perfunctory statement, said that it was rejecting the defense's argument and it was going with the government's recommendation for a very different sentence of consecutive ten years, a very different sentence from what the defense was asking for, which was a concurrent five-year sentence. And even after the district court made this statement, the government even acknowledged that it wasn't enough, because then the government said, District Court, please provide us more. And even at that point, the district court then just robotically ticked off some 3553A factors without individualizing them to this particular case and without saying anything, again, about any of the eight factors. So, Your Honor, turning to Blue, Slappy, and U.S. v. Cox, I'd like to speak a little bit about them because they're directly on point here. So, in Blue, Your Honor, this court said that the sentence was procedurally unreasonable because the district court failed to address two of the eight mitigating factors or sentencing arguments that the defense made. And the court said that even though the district court gave several reasons for the sentence. In United States v. Blue, the district court first said Blue's guideline was sufficient but not greater than necessary to meet the sentencing objectives of 3553A. Then the court said that it considered arguments on behalf of Blue with respect to his history and characteristics. Then the district court said that it noted Blue's substantial criminal history. Then the court said it noted the seriousness of the offense. Then the court in Blue acknowledged that Blue was influenced a great deal by an older sibling who engaged in bad behavior. Then the court said that it recognized Mr. Blue's substantial opiate addiction. But even after all of that, the court said the sentence was procedurally unreasonable. So it just can't be that the sentence we have here is procedurally unreasonable. That's a good question. The government argues, at least in part, that, well, even if this was procedurally unreasonable, maybe it's harmless error and kind of walks us through a harmless error analysis. And I do find harmless error in this context kind of confusing because the substantive rule already requires that the arguments be non-frivolous and that there be no contextual indication that they were considered. And so I guess I can use it. It's hard for me to imagine how an error that is defined that way might nevertheless be harmless, but maybe you can help me understand how it is. It is confusing, Your Honor, but let's look at U.S. v. Slappy. Okay. So in U.S. v. Slappy, the court found that the error was not harmless. And in that case, before I answer your question, there were three sentencing arguments that the defendant made that weren't addressed. And those were very mundane, mitigating arguments there that the defendant was employed, that the defendant was volunteering, that the defendant was attempting to rehabilitate himself. And the court still found that it was procedurally unreasonable. Then after that, the court addressed harmless error and said, look, the standard we apply here, look at it, is it plausible that the court may come to a different sentence if it had to explain the reasons, right? And the court said there's no way we can find that it's not even plausible that the court would not come to a different sentence. So that's the harmless error analysis. So when we do that analysis here, Your Honor, we're talking about eight rich mitigating factors and not one addressed by the district court. So absolutely here we cannot say that the error was harmless. So, Your Honor, if you have no more questions with respect to that, I'd like to move on to the supervised release conditions. Okay. So our first argument with respect to the supervised release conditions, Your Honor, are that they're procedurally unreasonable because there was no reason given also for these two very, very severe conditions. And these conditions include, first, a lifetime ban on the use of any computer device, any Internet-capable device, any similar electronic device, without the permission of the probation officer. And this is at any location. And the second condition was a lifetime ban on accessing any materials depicting or even describing sexually explicit conduct. So we're even talking about not pictures but words. So because these lifetime conditions, Your Honor, were so severe, so draconian, it was at least necessary for the district court to give some explanation. In U.S. v. Armel, this court squarely held that particularly when we have conditions that are so severe, there has to be some type of explanation. And there are several courts which have held that it's plain error when the court did not explain, give reasoning for the exact conditions that we're talking about here. For example, in Carraza Mercado, this is a First Circuit case. The court said that vacated the condition for ban on pornography, which is even narrower than what we have here, because there was no reasoning given. In U.S. v. Dotson, it's a Sixth Circuit case. There was plain error because the court gave no reason for the exact two conditions that we have here. In U.S. v. Shannon, this is another Seventh Circuit case. The court held that there was plain error because there was no reasoning given for ban on pornography. Why does it have to be plain error? I thought under Lynn that if you argue for a lower sentence, you argue that this case requires less deterrence than the average case. Why isn't that enough to preserve the requirement that the district court explain its sentence? Your Honor, well, I will go with that. I think that that is very, because I guess the supervised release condition, we did make an objection specifically to the reasoning for that. There's nothing, at least I couldn't find anything in Lynn that says you have to kind of. To separate it out like that. That is a very good point, Your Honor, because supervised release is a part of the sentence. And so you're absolutely right, Your Honor, that that's the standards that I would urge the court to adopt. So, Your Honor, also, these conditions, it's not only procedurally unreasonable, but they're also substantively unreasonable because each condition, it's a greater deprivation of liberty than necessary to carry out the sentencing or the supervised release goals. And so first, starting with the Internet ban, Your Honor, there's four factors, I think, that are very, very important here to determine whether it's overbroad, whether it's a greater deprivation of liberty than necessary. And the first is. I just want to ask you one quick question. Just assuming hypothetically I agreed with you that the district court procedurally erred by failing to offer any explanation at all for these conditions, would it be appropriate for us to continue to reach the substantive reasonableness of the conditions? Or is it better to wait until we have an explanation for why the district court thought they were appropriate? Well, I think, Your Honor, that based on this record, we're saying not only did the district court not give an explanation, but there is nothing on the record which would justify these. So, yes, we would take a vacature just for procedural unreasonableness. But I think you can go further here. Well, you know, the whole reason for the procedural unreasonable is to enable us to make the substantive review. And you sort of cut against that when you start laying out, giving us the opportunity to review the substance and saying we can review it. I think the whole purpose, initial purpose for giving reasons is to enable review. And I think it's a point well taken that if it's procedurally deficient, then the district judge ought to lay out what the substantive things are before we review them. Instead of us guessing. That is a very reasonable position because this court has said in the past that, you know, if something's procedurally unreasonable, you don't go on to do the substantive reasonable analysis. That is what this court has said. Well, not even do the analysis. It belies the fact that maybe it's not procedurally unreasonable. We're able to review it substantively. Well, in a record like this, it was so lacking when you look at the record. And one of the reasons that we were arguing about substantive unreasonable, Your Honor, is also I think it's important to note here that even in the District of Maryland, now the routine condition, the Internet computer ban, there is no more ban. The condition that probation recommends and that courts have been adopting is exactly what we're asking for, which is the best evidence that the condition here is too broad. And that condition is that the defendants can use computers, can use Internet-capable devices, but they have to be monitored and there have to be unannounced inspections. And even with respect to the sexually explicit condition, recently the government in a case in the District of Maryland, U.S. v. Maxon, 281 F sub 3rd 594, 2017, it's a decision by Judd Verdar, agreed that the condition here basically is too broad. And that's what the government said. Upon reviewing the available literature, it has seen no scientific or historical studies or academic papers on either side of this issue which establish or refute a direct causal link or even correlation between exposure to adult pornography and subsequent contact offenses against children. So even the government agrees that the condition is too broad here. So if the court doesn't have any further questions, I would ask that you vacate the sentence and vacate the conditions of supervised release here. Thank you. Thank you, Mr. Vitale. Mr. Budlock. Good morning. Good morning. I think if I sit here and get ready long enough, the time will just tick down and I'll be done. Yeah, it does. The clock was running. That's okay. May it please the Court, my name is Paul Budlock. I'm an assistant United States attorney, and I represent the United States in this matter. I was also trial counsel below. I would like to address some of the questions that Your Honors had for defense counsel, but I just want to sort of get back to one point in this case, which is sort of bring this back to the facts a little bit that Judge Motz was relying on, which is that this is a child pornography case where Mr. Ross, for years, was searching, downloading, making available for sharing child pornography, some of the worst types of child pornography we see, in the same home where he had abused, sexually abused an 11-year-old under his care, about a year before the arrest in this case. And in this case, Judge Motz went through the guidelines, found the guidelines, considered the 3553A factors, explained his reasons using those factors, did not abuse his discretion, and any error that he may have made was harmless. So the government asked the court to affirm that sentence. Now ‑‑ Counsel, can you start? And I just think the most helpful thing for me, at least, I mean, we decided this Blue case after you guys briefed the case, and I fully understand that. So you haven't had a chance yet to explain why Blue doesn't pretty squarely govern at least the sentence of imprisonment in this case. I mean, as I read our case law before Blue, like you could maybe argue that a sort of blanket rejection of all of the defendant's arguments was good enough. But after Blue, it's just really hard for me to see how we can say that there's not a procedural problem with the explanation for the sentence here. Yes, Your Honor, I appreciate that. And I think Blue, which I know Your Honor, Chief Judge Gregory authored, and Your Honor, Judge Harris was a part of, as well as Cox, which you authored, really draw that standard from Rita, and they draw that standard from Lynn. And with all due respect, I think there's one critical word used in Blue, and subsequently in Cox, that should not be used moving forward, and that is the requirement that the district court address every non‑frivolous argument. Because Rita clearly says ‑‑ That's the law. We can't. That's the law of the circuit. Except that the earlier panel in Lynn, addressing the identical issue, said that the district court is required to make a record to show that they considered all of the defendant's arguments and that there's a sufficient appellate record. Rita and Lynn. And it has extended to addressing and making it clear. And in Blue and in Slappy. And without a doubt, clearly Blue and Cox say that the district court must address every non‑frivolous argument. Right. But Lynn and Rita, which they cite for that proposition, don't actually say that. They say that it must consider it. And the risk of asking ‑‑ Well, actually, the Supreme Court, since Blue, has now revisited that in Chavez Meza. I'm surprised this wasn't brought to our attention. It talked about it only needed to manifest that the court considered the arguments and that those both are post Blue and Slappy and Cox. Well, I'm equally surprised that I didn't bring that to your Honor's attention as well. And I will take a look at that. It's a recent Supreme Court case. I think it's 2018. And I'll certainly ask the court to consider that in subsequent briefing once I locate that case. And I think that, although I haven't seen the rationale for that, I would like to address the rationale why. Well, the rationale is they reiterated and amplified Rita and DeGaulle and indicated that the goal was to provide information to the reviewing court sufficient to review it and that the district court considered it, that it's been manifest that the court considered the arguments and actually pointed out that not all the arguments need to be addressed. And that's critical. The record below supports that. But the reason it's critical, it's consistent with the Supreme Court and this circuit's law in dealing with sentences generally, which is that the district court doesn't have to robotically tick through every factor in 3553A. And even in Rita, when addressing, applying the actual sentence and dealing with the defendant's arguments, Rita indicated there are times when the district court should be more lengthy in its decisions, in its explanation, and there are times when it should be very brief. And it said it was a case-by-case basis and sort of subsequent. Yeah, but even the new Supreme Court case is not inconsistent with Blue, Cox, or Slappy, nor the lineage from Lynn. It says it must be manifest that it can sit. An address is not inconsistent with that. Manifest means you have to affirmatively show you've done so. Well, and what's critical is does the district court have to affirmatively show that it has considered each of them and rejected them, or does it need to address them one at a time? Yeah, but okay, let's see. Then that would be a case where there were eight and there's evidence to address, let's say, five. But here, none. Certainly, Your Honor, the district court in this case was clear on the record that he had considered all of them and addressed a few of them particularly. And if I could, Your Honor, for example, initially in pronouncing his sentence, what the sentencing judge said was at Joint Appendix 63, I've listened to what defense counsel has stated and I'm simply not persuaded. Now, I agree that's not dealing with any one of them specifically, but certainly he said for the record he'd heard them. What does that mean? Well, he continued. Well, we know he heard them because he was there. Right, and he's acknowledging that he was listening. He's acknowledging he was there and we know he's there. Has the bar moved anywhere from those two assertions? Well, no, but he goes on to speak later. Go ahead. But I think the first assertion does say, I've heard you, I'm not persuaded. And that's significant because he is acknowledging that he's listened to the defendant. But isn't that true always based on what the sentence is that he's not persuaded or she's not persuaded? Well, he goes on to, you know he was there, you know he was there, or she was there, the judge, correct? So, therefore, the judge heard it. And then when they give a sentence that's inconsistent with what's recommended, they must conclude that they didn't want to do that. None of that advances manifestly showing in the record that it's been considered or being addressed. Well, again, it's the starting point of what the sentencing court's comments were in this case. I mean, I thought you started with your strongest point, but go ahead. My mind thinks chronologically sometimes. I'll give the case the way you want. Go ahead. But go to the next one then. But then he goes on and says, well, I find that the guidelines aren't so flawed. And he says, not so flawed that there should be no sentence at all. But does he ever explain, I know he says they're not, so he addresses one argument, and he says they're not so flawed that there should be no sentence at all, the concurrent five years. But he never addresses, it's as though he thinks he only has two choices, concurrent five or consecutive ten. I think they're not so flawed that it should be concurrent five, therefore consecutive ten. It seems to me like there's a whole bunch of stuff that's left on the table and never addressed. It's odd to me that the district court never sort of seems to acknowledge that there's still everything in between nothing and ten years. Your Honor, and I noticed that argument in the defendant's briefing. And, frankly, I've never seen a district judge go through all of the years in between. It's not enough. It doesn't explain ten years to say that zero would be inadequate. That's all I'm saying. Well, in the context of this case. It explains why not zero. But that's all. Sure. But in the context of this case where the defendant got a below-sentence, below-guideline sentence by 68 months in a case where, it was a very serious case which was acknowledged by the court. And he was asking for no sentence. And on the record in front of the sentencing judge was a defendant who did not accept responsibility. Well, I have a question about that, too. I'm sorry. Because part of the mental health evidence in this case, one of my genuine concerns about this case, is that part of the mental health evidence went to explaining the failure to accept responsibility and the insistence on going to trial. So the failure of the district court to do anything to make clear that there had been consideration of that mental health evidence especially troubles me because the district court relied so heavily on the failure to accept responsibility, notwithstanding the evidence suggesting that that was the result of a mental health issue. Your Honor, two responses. First is I do think, although maybe not in any verbose way, that the sentencing judge did actually address the lack of remorse and the defendant's excuses or medical or mental health reasons as to why he might not be showing remorse. And that was when he spoke for the second time and he said, obviously the sentence is a serious one in terms of specific deterrence. I'm concerned about the lack of remorse even if there was remorse. And in terms of specific deterrence, that's my sentence. So I think a fair reading of that is the sentencing judge saying, look, I don't think he's showing remorse, but even if there was remorse, this is such a dangerous individual we need to specifically deter him. But I'll move on from that. In addition to him potentially addressing it, the argument about the lack of remorse here really has no rational connection to this case. So the defense says his mental health reasons are why he's not showing remorse. But the record is replete with not his demeanor in not showing remorse, not his inability to apologize, but it's replete with him denying the conduct. This is a man who was searching for years for explicit baby rape, child pornography. But when he was questioned and again at sentencing, he said that he was doing his own investigation. He had previously, a year earlier, been convicted of just a horrific sex offense on the 11-year-old. He completely denied that and indicated that the 11-year-old was lying up until the day of sentencing in both cases. So the sentencing judge had before him evidence of lack of remorse that didn't need in any way to rely on his presentation. And that seemed to be the crux of the defendant's argument with respect to the mental health impact on him. Basically, all of the arguments put forward. So defense counsel today says there were eight. There's probably more than eight. And that, of course, is the problem with putting the requirement on the district judge to address every argument raised by the defense. But there are arguments raised in the brief and below that weren't raised today by defense counsel, including that the judge should consider as mitigation the fact that the defendant had access to the child for years, but only sexually abused her once. The defendant didn't mention that they also listed as an argument for mitigation that the files on the computer that were seized, that were the subject of the prosecution, had been deleted and weren't currently accessible by the defendant. But the evidence in the case is that he deleted the files because he knew they were illegal and he didn't want to be caught by law enforcement. He should not be rewarded. But this is the nature of the arguments that the defendant made in this case for basically no sentence. And so, no, the judge didn't go through each and every one of those. He also didn't address why there were so few files. Well, then you'd make it a good argument that that's your argument that there are some of them weren't non-frivolous. In other words, that there were some frivolous ones. Let's put it in the positive. That there were some that you would argue were frivolous, correct? I mean, that's what you're arguing. Yes. Right. That may be it. But you certainly wouldn't say that it's frivolous as to his mental problems in terms of his childhood that have been diagnosed as undisputed in the record, correct? In the context of this case, I would say they were frivolous. Typically, that tragic childhood would be particularly important at a sentencing. But here, where the defendant received a sentence well below the guidelines for... What does a sentence have to do with the problem being connected with the behavior? Well, as in many of the cases dealing with how much explanation is disrecorded... No, no. You've got to follow me. What does that have to do with the connection with the problem with the behavior or the conduct? I'm not talking about how the judge might see what the sentence should be. I mean, overall, what I'm saying is it's still related, isn't it? Your Honor, my recollection from the sentencing, from the materials filed from the sentencing were that, and this is different from what defense counsel says, and so if I'm wrong, he'll correct me. There was no connection in that mental health exam between the defendant's mental health issues and his background and his childhood and the conduct in this case that related to him being sexually attracted to children  So another reason why that's non-frivolous is that there frankly was no connection to this case in any way. And so in the context of the perfect sentencing, certainly the district court could go through each one of these and address them, including the defendant's tragic childhood. But it didn't. It didn't. But the standard, of course, isn't that the sentencing would be perfect. It's just to be there enough for the court to see upon review. Are you stating the law or what you want it to be? It said it must address non-frivolous arguments in mitigation of the sentence. Right? That's the law. I mean, you pretty much gave what you wanted to say. Your Honor, the government's position is the law is that the district court must have evidence in the record that he considered all of the non-frivolous arguments. But I'm also making the point here that the court needs to be. But you're ignoring the Fourth Circuit precedent? Well, I think the Fourth Circuit precedent that controls, and I won't belabor the court because I certainly understand those recent cases use the word address, but they do cite to Lynn and Rita, which use the word consider. What does that make the difference? What difference does that make? Your Honor. In terms of the precedent of the court. How do we know that they were considered? I guess, I'm sorry, I think Judge Gregory has already answered this question, but that just seems like the best evidence that something has been considered is that the district court says, I considered it. Without a doubt. That is the best evidence, not only if he says he considered it, but if he addresses them. I don't dispute that. And maybe it was an inartful term, but that's why I said in a perfect sentencing, with unlimited time, a district judge. I guess I'm just missing, because I think we do say in blue that should address it or it has to be patent from the record that it was considered. So what else could I look at in this sentencing to be sure? Like this district court was really focused on this mental health thing, didn't address it. Well, my first response, not to repeat, is that it was frivolous and it didn't need to be addressed at all. But to the extent that the case law required that that particular fact be addressed, the district court did not specifically mention mental health. But the government's position is that when you look at his comments in totality, when he references that there might be remorse, even though he doesn't see it, and when he says, I've listened to and consider all of the evidence. So it's the blanket, I've listened to all the evidence. Right. And then he says the reasons for my sentence are essentially adopting the government's position, which, again, he had just sat through an hour and a half, two hours, of the parties presenting evidence and addressing all of these very issues, that he's basically adopting the government's position in rejecting all of the defendant's arguments for mitigation that are essentially frivolous. And I want to address Your Honor's question earlier about the difference between if there's a procedural requirement to address, and I'll assume that for now since it seems to be that's the way this panel views it. This panel views it? Yes. Okay, go ahead. That seems to be if there is a requirement to address each non-frivolous mitigation argument, how do we square that with the idea that there could also be harmless error? And I do think that there is a difference. So you could find error because a particular argument is non-frivolous. Non-frivolous is not the highest standard. But then the court could look at the arguments more substantively and say, well, we can analyze those arguments on the record. We can look at the government's sentencing memo. We can look at the defendant's sentencing memo. We can look at the arguments of parties. And that's what I was mentioning earlier, that the court had referenced those arguments. And it is apparent that all of these arguments in the context of this case with these guidelines are weak. And it's also apparent that if this case were sent back to the sentencing judge, he would find the exact same sentence. And this court's held in Boulware that you're not going to send back a case for sentencing when it's patently obvious that the sentence would be the same. And specifically in Boulware, the court found harmless error in a case where the government conceded that there was no individualized assessment under 3553A, which that's not the case here. That doesn't seem to be even what the defense is arguing. Clearly, the sentencing judge referenced those factors. But in that case, it was conceded. But in Boulware, harmless error was found because, according to the appellate court, the district court said it read the defendant's letters, which listed reasons for mitigation, and the court considered the 3553A factors. And the court said that even though the court failed to explain why he was rejecting the defendant's arguments, it was confident that the district court had undertaken the analysis and that the result on remand would be the same. And those same factors are here. The district court indicated for the record that he had heard the arguments and he was rejecting them, and the district court clearly indicated that he had listened, that he had used the 3553A factors in fashioning the appropriate sentence. So there's enough information in a harmless error context, which is different from the procedural reasonableness. If I could, Your Honor, one additional point relating to the consider versus address. If this court, and if it's already the law, then I'm certainly wasting my time, but if this court continues with making the requirement that the district court must address every non-frivolous. What the court says in blue is that it has to be patently obvious from the context that the arguments were considered. The best way to make it obvious is to address them. But that's what blue says, right? It has to be patently obvious. We're not just going to assume because the district court says, oh, yeah, I was here and I was paying attention, that the district court specifically considered each non-frivolous argument. But that is the holding of blue. I think you're eliding a little bit what blue held. Well, very well, Your Honor. I'll move on from that just to point out that it would certainly create a scenario in the district court in terms of sentencing that's greatly different from the way things are now in terms of the amount of time and the way the district court and the appellate courts would have to pick through the record to determine what's an argument, what's a sub-argument, what's non-frivolous. Defense attorneys would probably see significantly more arguments of all types so that they could basically set a trap door for district judges in terms of hoping that they don't address an argument, hoping they don't address it sufficiently. Sentencings will certainly increase by hours, if not days, if that were to happen. But moving to the supervised release conditions, Your Honor, the defendant has indicated in his brief on page 24 that the standard when a supervised release condition is imposed that's not objected to is plain error. Here today he's, after the court's questioning, attempted to make a slightly different argument. Well, it really is plain error as applied to the substantive reasonableness, I think, of the conditions. And that's how I more read the concession in the brief. But just the failure to provide any explanation, we did say in Lynn, that that particular argument, not the substantive reasonableness, but that just the district court didn't explain anything about these conditions, that that is preserved just by asking for a different sentence. And, Your Honor, just in looking at the cases cited both by the defense that actually struck down some of these conditions and by the government that uphold these conditions, many of them were situations just like this where there was no comment, no objection, and most of them in that context were viewed in a plain error standard. So I do believe that's why. In our court? There's none in the Fourth Circuit. Lynn is sort of unusually, I mean, maybe you think Lynn is wrong too, but Lynn is pretty generous in terms of preservation of this particular argument. I don't recall that Lynn involved supervised release conditions as much as the sentence. I understand that was the court's question, is it all the same? But from my reading of cases where supervised release conditions weren't objected to, it does seem to be moving forward in the plain error standard. The Fourth Circuit doesn't have a case that presented in that context. It does have the Granger case, however, that did, under an abuse of discretion standard, find that the very conditions relating to computer access and ban on pornography were upheld by the panel in that case. Basically, there are no cases. So for plain error to have been violated here, for the court to find plain error, there would have to be a case in this circuit that would hold that these conditions of supervised release are improper, and there aren't. That's a substantive end, but we have cases that say you must explain conditions on supervised release, and you're not arguing that the district court explained those, are you? No. Okay. The defendant didn't object to those. They didn't come up in the sentencing other than the – Explain, Carmel says right on it, if you're going to impose conditions on supervised release, you must explain them. Right, and if you don't, the court should review in a plain error standard, and given that there's no cases that have said that these conditions are inappropriate – But I'm talking about the procedural point, that they weren't explained, and there are cases in the Fourth Circuit saying you must explain conditions on supervised release. So why isn't the procedural error plain? Because in those cases, they were reviewed on a different standard. They were objected to, and so the – No, no, I understand, but once those decisions are handed down, how is the error not plain when this district court fails to follow the clear case law of our circuit, which I don't understand you to be challenging, that Armell is still good law, and that under Armell, a district court must explain the conditions on supervised release. I see your question, and I'm maybe interpreting what is plain error differently. I think you're interpreting plain error as the procedural requirement to explain it, and I don't think that that's how it applies. I think the plain error applies to whether or not the imposition of the conditions – Yes. Okay. Yes, but under the plain error standard, because no court has ever said that these conditions are inappropriate, especially in cases like this, the error simply could not have been plain. But the procedural error was plain. I don't know that there's – How was it not plain? Then there would be no such thing. So if this court were to say that procedural error is plain, there would be no circumstance where this court could review a condition of supervised release under plain error, because it would only appear when it wasn't addressed procedurally, and under that theory it would always be plain. I don't understand. Why doesn't it go like this? This district court committed a plain error when it failed to explain the conditions on supervised release. We're sending it back. The district court will explain it, and when it comes back to us, we will consider it whether it's substantively reasonable or not. Is that not – that can't work? I don't think it can work. I don't think that plain error works with respect to a procedural error. So I think that when it's not objected to – So procedural error can never be plain. When it's not objected to and the district court doesn't make any comments on it, at least in all of the cases that we have cited, both sides, it's been reviewed under a plain error standard. The way I hear the court's question is – For current purposes, I'm going to agree with you hypothetically that plain error review applies to the procedural concern I have here, which is that we have no explanation at all for these sentences. I'm reviewing that procedural question under plain error. I'm finding the error plain. I'm sending it back so we can get an explanation before we reach the substantive merits of these conditions. Why doesn't that work? It seems pretty straightforward. I mean, if that is the way the analysis should work, I would agree. I just don't believe that that's the way plain error analysis works in this context. Plain error analysis works as we look at substantively, is this the wrong condition for this individual if it was no objection to it? And that's the purpose of the objection is to give the district court the ability to address it. Now, I'm not saying the district court doesn't have an obligation to address it anyhow. Clearly they do. But that's sort of – that is the purpose of it. It's front the issue so the district court can decide it. If you don't front the issue, court appeal will review it for plain error. In this case, when reviewed on plain error, there's no error because no court has held that these conditions shouldn't be imposed. And, in fact, the courts that have addressed it in the Fourth Circuit have upheld similar bans. And while the defense cites two cases in the Third and Seventh Circuit, there are cases in the Fifth, Eighth, Ninth, Tenth, and Eleventh Circuit that have held identical bans on Internet access, on computer possession, and on the possession of pornography, as well as all the other conditions that the defendant is attacking in this case. Significantly, what those other cases have indicated is that they, in upholding the prohibition on pornography and computer monitoring, are giving more weight to protecting the public and deterring the defendant, while the Third Circuit and Seventh Circuit are giving more weight to daily necessities of the defendant's life, which, frankly, are quite overstated in this case. The other thing I'd point out is that the ban in this case is not a complete ban because it does allow for two exceptions. One is, if the United States Probation Office grants permission, the defendant can use a computer at work, he can access the Internet. And the second is, related to that, is that he can use it at work with their permission. So it's not a complete ban and it's also not a lifetime ban because, as this Court is aware, it's very common in supervised release cases, but certainly in lengthy child pornography supervised release cases, for defendants to go back to the district court and ask for modifications of their conditions, for example, to allow computer use at work or at home, depending on how they're doing, and also to shorten the term of supervised release. And we see this quite often. That's my argument. Unless you have any questions for me, I'll step back. Thank you so much, Mr. Bobo. Mr. Patel? Your Honors, I just briefly wanted to address the harmless error point. I know that counsel brought up U.S. v. Bulware, in which this Court found that the procedural reasonable error was harmless, but that's a very different case than what we have here. In that case, the Court, first of all, said that there were strong indications that the district court fully considered Bulware's arguments. And beyond that, the Court said that the argument that the defense was making, that arguably the district court didn't address, was that her friends and family would be impacted by her incarceration. And this Court said, well, that's always the case. You know, every time a defendant goes to prison, family members, friends are going to be impacted. So that's a very weak argument. Further, the Court said that there wasn't anything unusually severe or unusual about the circumstances, and there was no evidence on the record that this defendant's care was indispensable to anyone. So Bulware is completely inapposite to what we're talking about here. When you look at U.S. v. Slappy and you look at the harmless error analysis there, then it makes clear that the error here, the procedural unreasonableness error, is not harmless. Judge Harris, also you had some questions about, or the government was saying that something cannot be plainly unreasonable, supervised release condition ban can't be plainly unreasonable, procedurally plainly unreasonable. But there's several cases that we cited to recently in our 20HA letter and that I alluded to earlier, where courts have said that it was plainly procedurally unreasonable. And that's the First Circuit case in Peraza-Mercado. It's the Sixth Circuit case in U.S. v. Dodson, and the Seventh Circuit case in U.S. v. Shannon. They all say that it was plainly procedurally unreasonable because the district court did not give any explanation for the conditions of supervised release, exactly the type of ones we're talking about here. So if the court does not have any further questions, then I will rest. Thank you. Thank you, counsel. We'll come down, greet counsel, and see you to our final case of the term.
judges: Roger L. Gregory, Paul V. Niemeyer, Pamela A. Harris